MICHELIN TIRE CORPORATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75-9-02467

Before WATSON, *Judge.*

MEMORANDUM OPINION AND ORDER

(Dated December 15, 1982)

*Windels, Marx, Davies & Ives (Paul Windels, Jr.* and *John Y. Taggart* of counsel) for the plaintiff.
*J. Paul McGrath,* Assistant Attorney General, *David M. Cohen,* Director Commercial Litigation Branch *(Joseph I. Liebman,* Attorney in Charge, International Trade Field Office) for defendant.
*Frederick L. Ikenson, amicus curiae.*

WATSON, *Judge:* This opinion deals with the issues raised regarding determinations made by the International Trade Administration of the Department of Commerce (ITA) on remand from this Court following the Court's opinion in *Michelin Tire Corp.* v. *United States,* 2 CIT 143 (1981). One purpose of the remand was for the ITA to recalculate a loan interest bounty, based on the Court's

finding that the interest rate paid by plaintiff was 1.56 percent (rather than 2 percent) lower than prevailing rates. The second purpose of the remand was to have the ITA determine the proper allocation of grants, in light of the Court's finding that allocation over the period of a loan was incorrect when the grants were not obligated to be used in repaying the loan. The Court directed the Secretary of Commerce to:

> consider whether any justification exists for allocating the grants to a period shorter than the useful life of the capital assets or to determine the useful life of the assets if no shorter period is justified.

The Court further directed that the Secretary should:

> determine whether or not the benefits of the grants were experienced in earlier periods to a disproportionate extent and * * * state the reasons upon which his conclusion is based.

In its redetermination,[1] the ITA concluded that the grants should be allocated over *half* the accounting useful life of the capital assets they were used to purchase, i.e., half the accounting useful life of the plant and equipment. It justified this allocation as being in conformity with "an inferred congressional directive * * * for presumptive use of periods of less than full useful life," and "the congressional intent to front load the benefit of grants which aid an enterprise in acquiring capital plant and equipment."

It then gave a number of additional underlying reasons for choosing this approach. The principal reason was that it was "the inherent nature of these grants to bestow a disproportionate benefit in the earlier years after receipt." The ITA further states:

> The most important rationale supporting front loading is that the financial assistance of capital grants, for construction of new capacity and for expansion of existing capacity, reduces the costs of investment and market development in a crucial period when start-up costs are high and production relatively low. Thus, such grants have greater economic value to the recipient during the initial stages.

The remaining reasons generally state that the new assets are more efficient, more productive, and less expensive to maintain. In addition, the ITA opined that its method reduced the possibility that a subsidy would not be fully recovered by eliminating the later phase of the useful life of the asset when the product might become obsolete.

The ITA also made alternate calculations for the Court's consideration, using a sum-of-the-years digits method.

During the pendency of this latest phase of judicial review, the Court was informed by counsel for plaintiff that the Rubber Manufacturers Association had withdrawn the petition which led to the countervailing duties at issue in this action. The Court made in-

---

[1] Final Results of Redetermination and/or Recalculation Pursuant to Court Remand * * * (submitted to the Court under cover of a letter dated February 23, 1982).

quiry of the parties as to the possible effect of that withdrawal on this litigation. As a result of the responses, the Court is satisfied that the withdrawal was done for purposes related to the conclusion of an administrative review proceeding and had no bearing on the assessment of countervailing duties prior to 1980.

The Court finds that the determinations made by the ITA on remand do not satisfy the requirements of the remand and additionally, are arbitrary and not in accordance with the law. The Court expected the ITA to make a determination of fact, namely, whether plaintiff experienced the benefit of these grants to a greater extent in a period shorter than the useful life of the assets. Instead, it is offered an asserted legislative mandate sanctioning some sort of presumption to that effect and a series of theoretical rationales. The legislative mandate does not exist.

The rationales are not shown to be based on generally accepted principles of accounting for assets or of established rules or standards for analyzing the financial condition of business enterprises. If they are true, they are not shown to have been properly related to the situation of the plaintiff.

In short, the use of a period of half the accounting life of the capital assets amounts to a procrustean method, unrelated to the facts, and unsupported by law or rule. The same is true of the alternative sum-of-the-years digits method.

In its prior decision, the Court pointed to committee reports on the Trade Agreements Act of 1979 (H.R. Rep. No. 96–317, 96th Cong. 1st Sess. 74–75 (1979) and S. Rep. No. 96–249, 96th Cong., 1st Sess. 86 (1979)) only as an indication of the logic which might support a method of allocation other than by straight line over the life of the asset, i.e., the experience of benefits in a disproportionate manner. This was a far cry from discerning a legislative mandate for "front loading" or compression or distortion of the useful life of the assets and even farther from warranting an extension of that "mandate" to the analysis of events prior to the passage of the Trade Agreements Act of 1979.

The legislators expressed only the concern that benefits might be experienced disproportionately in the early years. The determination of whether this is the case is left to the I.T.A. but expedient distortions of the useful life of assets are not sanctioned anywhere.

The Court sees only two possibilities for the lawful allocation of grants. Either the benefit they bestow is calculated according to uniform and generally accepted principles, (already established or properly established for this purpose) or the uniform principles are varied or departed from because of specific facts found to exist in a given investigation.

In other words, the determination of the benefits experienced by the recipient of a grant must flow either from the operation of established and uniform principles on the general facts found or from an independent, direct factual finding of benefit.

Here the use of half the useful life has nothing to recommend it by way of conformity to established and recognized principles. The reduction of useful life might just as easily have been fixed at ¾ or ⅓. It is not supported by substantial evidence or legally recognizable principles of accounting. Nor, as an alternative, was there a finding of facts which could serve as a basis for departure from normal principles of financial accounting.

The Court has struggled with the possibility of itself formulating an exact allocation method in the course of this judicial review. However, in the end, the Court is forced to recognize that the formulation of such a standard cannot be adequately derived from the record in this case and requires the Court to engage in analysis which, at least in the first instance, should be within the competence of the administrative agency. The record permits relative assurance only concerning what is wrong or doubtful in these proceedings.

The arbitrary compression of useful life is wrong. The reliance on full useful life in conjunction with a straight line allocation of the grant appears doubtful when the cogent analysis of *amicus* is considered. *Amicus* demonstrates an anomaly in which, when this method is utilized, the benefit of an outright grant does not exceed what should be the lesser benefit of a loan of an equal amount at a preferential rate of interest *in which the entire principal of the loan is repaid.* Also of doubtful validity is the insistence by plaintiff that the benefit must be directly determined in terms of enhanced product competitiveness. General financial benefit to the production is sufficient to support a determination of subsidy and a quantification of exact competitive benefit to the products need not enter into the allocation of the benefit. Calculations of competitive benefit in the measurement of a subsidy would be tantamount to engrafting an injury requirement on to the basic determination of the existence of a subsidy. This line of reasoning has been rejected. *ASG Industries Inc.* v. *United States,* 67 CCPA 11, C.A.D. 1237, 610 F.2d 770 (1979).

In a similar doubtful status is the argument by *amicus* which focused on the capital assets which were purchased with the grants and asserted that their value each year as it appears on the corporation's balance sheets (usually acquisition cost less accumulated depreciation) represents the true continuing value of the grant. One need only ask if a single grant used to purchase capital assets is the equivalent of a series of annual grants, each one equal to the book value of the capital assets in that year. The latter appears on its face to be a more substantial and sustained benefit.

*Amicus* offers one alternative which holds promise to the extent that it may represent an appropriate application of recognized principles of financial analysis. It first assumes *arguendo,* the correctness of allocating the grant over a term of years, based on the life of the asset, but refines the analysis of benefit by taking into

consideration the time value of the money. In this technique, in a given year the benefit consists of the portion of the grant allocated to that year plus an amount representing the interest that would not have to be paid on the portion of the grant not yet allocated. In this or in some other method which utilizes the time value of money we may have an acceptable and recognizable means of analyzing financial benefit.

The conclusion reached here is that the method of allocation used by the ITA was not based on fact and did not embody generally accepted principles or methods of financial accounting or analysis. There appear to be alternatives available which, in the interests of justice, ought to be considered on the administrative level. The case will again be remanded for reconsideration and determination of this important point.

With respect to the calculation of the loan interest bounty by applying the 1.56% interest differential to the entire $50 million loan, the Court continues to believe that this is a correct reflection of the benefit received by plaintiff. This conclusion is reached notwithstanding the fact that Commerce took a different position in *not* calculating the interest subsidy against the entire $50 million loan in its review published on October 2, 1981 (47 F.R. 4837 and entitled "Final Results of Administrative Review.") From the record in this case, the Court remains of the opinion that for the period at issue here the preferential rate was applied to the entire $50 million loan.

For the measurement of the lives of the buildings and equipment, the Court finds no error in the ITA's use of periods of forty and twenty years respectively. This is a matter in which standardized practices are in existence, such as the United States Depreciation Tax Tables, and this is a sufficient basis for the determination.

In this action, the Court maintains the categorization of training grants as capital grants. This view has not been changed by the fact that the ITA, in its later 1978 and 1979 administrative reviews of countervailing duty rates for plaintiff, chose to treat such grants as other than capital grants and allocated them entirely to the years of receipt.

For the reasons discussed above, this matter is hereby remanded to the ITA for redetermination of the method of allocation of capital grants in accordance with this opinion. It has 120 days to report its redetermination to the Court.